IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

| JEFFREY D. SHANNON, | : | |
| --- | --- | --- |
| Plaintiff, | : | CIVIL ACTION |
| v. | : | No. 09-3138 |
| EQUIFAX INFORMATION SERVICES, LLC, | : | |
| Defendant. | : | |

January _26_ , 2011                                                                                                  Anita B. Brody, J.

**MEMORANDUM**

**I.     Introduction**

Plaintiff Jeffrey D. Shannon ("Plaintiff" or "Shannon") brings suit against Defendant Equifax Information Services, LLC ("Defendant" or "Equifax")[1] under the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* (2006) ("FCRA"); the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 Pa. Cons. Stat. §§ 201-1 *et seq.* (2008) ("UTPCPL"); and the common law doctrines of negligence and invasion of privacy/false light. This Court has jurisdiction pursuant to 15 U.S.C. § 1681p (2006) and 28 U.S.C. §§ 1331, 1367 (2006). Defendant Equifax has filed a motion for summary judgment. For the reasons set forth below, I will grant in part and deny in part that motion.

**II.     Background[2]**

---

[1] Plaintiff has settled with Defendants Verizon Pennsylvania, Inc., and Experian Information Solutions, Inc. *See* Order, July 15, 2010, ECF No. 28.
[2] On a motion for summary judgment, the facts are interpreted in the light most favorable to the non-moving party. *Hunt v. Cromartie*, 526 U.S. 541, 552 (1999). All facts are taken from Defendant's Statement of Undisputed Material Facts, ECF No. 29, as admitted by Plaintiff in his Counterstatement of Material Facts, ECF No. 31. On

1

Plaintiff Jeffrey D. Shannon moved from Paoli, Pennsylvania to West Chester, Pennsylvania in 2008, and requested that Verizon transfer service from his old to his new address, effective July 17, 2008. Statement of Undisputed Material Facts ¶ 19, ECF No. 29; Counterstatement of Material Facts ¶ 19; ECF No. 31. In September of 2008, Verizon stated that Plaintiff owed $260.10. Statement ¶ 20; Counterstatement ¶ 20. On October 18, 2008, Plaintiff sent Verizon a check for that amount. Statement ¶ 21; Counterstatement ¶ 21. On October 27, 2008, Plaintiff received a bill from Verizon, stating that Plaintiff owed $161.16. Statement ¶ 22; Counterstatement ¶ 22. On November 27, 2008, Plaintiff received a bill from Verizon, stating that Plaintiff owed $180.76. Statement ¶ 23; Counterstatement ¶ 23. On December 27, 2008, Plaintiff received a bill from Verizon, stating that Plaintiff owed $183.12 ($180.76 plus a $2.36 late fee). Statement ¶ 25; Counterstatement ¶ 25. Verizon representatives advised the Shannons to disregard both the November and December bills. Statement ¶¶ 24, 26; Counterstatement ¶¶ 24, 26.

In March of 2009, Plaintiff received a collection notice from the North Shore Agency, Inc., seeking to collect $183.12 on behalf of Verizon. Statement ¶ 27; Counterstatement ¶ 27. On March 24, 2009, a Verizon representative advised Plaintiff that he was in fact entitled to a refund of $76.98, since he had paid $260.10 in October when only $183.12 was due. Statement ¶ 28; Counterstatement ¶ 28. However, Plaintiff never received a refund check. Statement ¶ 29; Counterstatement ¶ 29. Rather, Verizon never cashed Plaintiff's check for $260.10. Statement ¶ 30; Counterstatement ¶ 30.

---

occasion, Plaintiff has stated that he "is without knowledge or information sufficient to form a belief as to the truth of the allegations." I have nevertheless included some of those facts as undisputed, as the nonmoving party on a motion for summary judgment cannot rely upon "bare assertions, conclusory allegations or suspicions" to support its claim that there is a genuine issue for trial. *Fireman's Ins. Co. v. DuFresne*, 676 F.2d 965, 969 (3d Cir. 1982). *See infra* Part III.

Equifax is a consumer reporting agency. Statement ¶ 1; Counterstatement ¶ 1. It compiles information it receives from creditors, public records, merchants, and other sources and assembles that information into credit reports that are provided to subscribers who have a permissible purpose for obtaining these reports. Statement ¶ 1; Counterstatement ¶ 1. It maintains credit history files on more than 200 million consumers and receives over one billion updates from thousands of data furnishers every month. Statement ¶ 2; Banks Decl. ¶ 4, ECF No. 29. Equifax accepts information regarding a consumer's credit only from those sources that are determined by Equifax to be reasonably reliable. Statement ¶ 3; Banks Decl. ¶ 5.

On May 20, 2009, Equifax received notice of Plaintiff's dispute with Verizon. Statement ¶ 31; Counterstatement ¶ 31. On May 28, 2009, Equifax prepared an Automated Consumer Dispute Verification ("ACDV") concerning Plaintiff's dispute and sent it to Verizon. Statement ¶ 37; Banks Decl. ¶ 23. The form included a box labeled "FCRA Relevant Information," in which Equifax wrote: "Consumer states that the outstanding balance write off noted on this account is derived from an error in Verizon[']s billing and Verizon has indicated that he is overpaid on this account and [will] send him a refund check." Statement ¶ 38; Banks Decl. ¶ 24. Verizon provided an automated response that an unpaid balance of $183.12 had been correctly reported as a loss. Statement ¶ 39; Banks Decl. ¶ 25. Thus, Equifax made no changes to Plaintiff's credit file. Statement ¶ 40; Counterstatement ¶ 40.

**III.     Legal Standard**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Kornegay v. Cottingham*, 120 F.3d 392, 395 (3d Cir. 1997). A fact is "material" if the

dispute "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual dispute is "genuine" if the evidence would permit a reasonable jury to return a verdict for the non-moving party. *Id.*

The party moving for summary judgment bears the initial burden of demonstrating that there are no material facts supporting the nonmoving party's legal position. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party carries this initial burden, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The nonmoving party cannot rely upon "bare assertions, conclusory allegations or suspicions" to support its claim. *Fireman's Ins. Co. v. DuFresne*, 676 F.2d 965, 969 (3d Cir. 1982). Rather, the party opposing summary judgment must go beyond the pleadings and present evidence, through affidavits, depositions, or admissions on file, to show that there is a genuine issue for trial. *Celotex*, 477 U.S. at 324.

The threshold inquiry at the summary judgment stage involves determining whether there is the need for a trial, that is, "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.

**IV.   Discussion**

Defendant has moved for summary judgment on each of Plaintiff's four claims against it: 1) that Defendant violated the FCRA, 2) that Defendant violated the UTPCPL, 3) that Defendant was negligent, and 4) that Defendant invaded Plaintiff's privacy by casting Plaintiff in a false

light. I will deny Defendant's motion on Plaintiff's negligent FCRA claims, but I will grant

Defendant's motion on Plaintiff's remaining claims.

### A. FCRA

In Count IV of his Complaint, Plaintiff alleges that Defendant violated the FCRA by

- Willfully and negligently failing to conduct a proper and reasonable investigation concerning the inaccurate information after receiving notice of the dispute from the Plaintiff, in violation of 15 U.S.C. § 1681i(a);
- Willfully and negligently failing to provide prompt notice of the inaccurate information and Plaintiff's dispute to the furnishing entities, in violation of 15 U.S.C. § 1681i(a);
- Willfully and negligently failing to provide all relevant information provided by the Plaintiff regarding the dispute of the inaccurate information to the furnishing entities, in violation of 15 U.S.C. § 1681i(a);
- Willfully and negligently [failing] to review and consider all relevant information submitted by the Plaintiff concerning the dispute of the inaccurate information, in violation of 15 U.S.C. § 1681i(a);
- Willfully and negligently failing to note the Plaintiff's dispute of the inaccurate information and in subsequent consumer reports, in violation of 15 U.S.C. § 1681i(a);
- Willfully and negligently failing to timely and properly investigate the inaccurate information after receiving notice of the dispute from the Plaintiff;
- Willfully and negligently failing to employ and follow reasonable procedures to assure maximum possible accuracy of Plaintiff's credit report, information and file, in violation of 15 U.S.C. § 1681e(b);
- Willfully and negligently failing to properly and timely delete the inaccurate information from Plaintiff's credit files despite being unable to verify the accuracy of the information and/or being provided with proof of its inaccuracy; and
- Willfully and negligently continuing to report the inaccurate information despite having knowledge of its inaccuracy and/or inability to be verified.

Compl. ¶ 53, ECF No. 1.

Equifax has primarily countered that it cannot be held in violation of 15 U.S.C. §

1681i(a) or § 1681e(b) because the disputed information on Plaintiff's credit report was, in fact,

accurate. Reply 5-6. In the alternative, Equifax contends that it maintains reasonable procedures and conducted a reasonable reinvestigation following Plaintiff's complaint. Reply 7-10.

### i. Overview

By way of legal background, the Fair Credit Reporting Act was passed to ensure that "consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information." 15 U.S.C. § 1681(b) (2006). "In the FCRA, Congress has recognized the crucial role that consumer reporting agencies play in collecting and transmitting consumer credit information, and the detrimental effects inaccurate information can visit upon both the individual consumer and the nation's economy as a whole." *Philbin v. Trans Union Corp.*, 101 F.3d 957, 962 (3d Cir. 1996). Consumers themselves play a role in enforcing the statute: § 1681o provides a private right of action for negligent violations, and § 1681n for willful violations.

Section 1681e(b) of the Act states: "Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." Section 1681i(a)(1)(A) then provides:

> [I]f the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer and the consumer notifies the agency directly, or indirectly through a reseller, of such dispute, the agency shall, free of charge, conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file . . . before the end of the 30-day period beginning on the date on which the agency receives the notice of the dispute from the consumer or reseller.

Thus, § 1681e(b) governs the behavior of credit reporting agencies when preparing credit reports generally. Section 1681i(a) governs the behavior of credit reporting agencies when reinvestigating consumer credit history upon receiving notice of disputed information.

More specifically, negligent noncompliance with § 1681e(b) consists of four elements: "'(1) inaccurate information was included in a consumer's credit report; (2) the inaccuracy was due to defendant's failure to follow reasonable procedures to assure maximum possible accuracy; (3) the consumer suffered injury; and (4) the consumer's injury was caused by the inclusion of the inaccurate entry.'" *Cortez v. Trans Union, LLC*, 617 F.3d 688, 708 (3d Cir. 2010) (quoting *Philbin*, 101 F.3d at 963).

To find a § 1681i(a) violation, the consumer must demonstrate that the consumer reporting agency "had a duty to do so, and that it would have discovered a discrepancy had it undertaken a reasonable investigation." *Id.* at 713. On what constitutes a reasonable investigation, the Third Circuit has held that "in order to fulfill its obligation under § 1681i(a), 'a credit reporting agency may be required, in certain circumstances, to verify the accuracy of its initial source of information,'" and that "'whether the credit reporting agency has a duty to go beyond the original source will depend' on a number of factors." *Cushman v. Trans Union Corp.*, 115 F.3d 220, 225 (3d Cir. 1997) (quoting *Henson v. CSC Credit Servs.*, 29 F.3d 280, 287 (7th Cir. 1994)). Those factors include "'whether the consumer has alerted the reporting agency to the possibility that the source may be unreliable or the reporting agency itself knows or should know that the source is unreliable,'" as well as "'the cost of verifying the accuracy of the source versus the possible harm inaccurately reported information may cause the consumer.'" *Id.* (quoting *Henson*, 29 F.3d at 287).

7

To show willful noncompliance with either provision, the Third Circuit has held that a plaintiff can "show that defendants knowingly and intentionally committed an act in conscious disregard [of the FCRA], but need not show malice or evil motive." *Philbin*, 101 F.3d at 970 (internal quotations and citations omitted). More recently, the Supreme Court has clarified that "reckless disregard" also rises to the level of a "willful" violation of the FCRA. *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47 (2007); *see also Cortez*, 617 F.3d at 721.

### ii. Accuracy Defense

Defendant's first ground for seeking summary judgment on Plaintiff's FCRA claims is that Plaintiff's credit report was in fact accurate, and that Plaintiff therefore cannot clear the inaccuracy threshold for successfully asserting FCRA violations.

Accuracy has been held to be a defense to alleged violations of § 1681e(b). In other words, in order to make out a prima facie violation of that section, "the Act implicitly requires that a consumer . . . present evidence tending to show that a credit reporting agency prepared a report containing 'inaccurate' information." *Cahlin v. Gen. Motors Acceptance Corp.*, 936 F.2d 1151, 1156 (11th Cir. 1991); *see Philbin*, 101 F.3d at 963 (noting that one of the elements of a cause of action under § 1681e(b) is that "inaccurate information was included in a consumer's credit report"). If a plaintiff "fails to satisfy this initial burden, the consumer, as a matter of law, has not established a violation of [§ 1681e(b)], and a court need not inquire further as to the reasonableness of the procedures adopted by the credit reporting agency." *Cahlin*, 936 F.2d at 1156.

Accuracy has also been held to be a defense to alleged violations of § 1681i(a). *See DeAndrade v. Trans Union LLC*, 523 F.3d 61, 67 (1st Cir. 2008) ("[T]he weight of authority in

other circuits indicates that without a showing that the reported information was inaccurate, a claim brought under § 1681i must fail."); *see also Cahlin*, 936 F.2d at 1160 ("[A § 1681i(a)] claim is properly raised when a particular credit report contains a *factual* deficiency or error that could have been remedied by uncovering additional facts that provide a more accurate representation about a particular entry."); *Klotz v. Trans Union, LLC*, 246 F.R.D. 208, 212-13 (E.D. Pa. 2007) ("A claim under 1681i will also fail if the consumer cannot show that the information in his or her file was inaccurate. . . . If the information in a consumer's file was, in fact, correct, then no investigation could have revealed the existence of inaccurate information because there was no inaccurate information to uncover." (citing *Cushman v. Trans Union Corp.*, 115 F.3d 220, 226-27 (3d Cir. 1997)).

What constitutes accuracy thus becomes an important question, and there is currently a circuit split on the issue. The Sixth Circuit, and some district courts, have held that technical accuracy is sufficient and provides a defense to alleged FCRA violations. *See Dickens v. Trans Union Corp.*, 18 F. App'x 315, 318 (6th Cir. 2001); *see also McPhee v. Chilton Corp.*, 468 F. Supp. 494 (D. Conn. 1978); *Todd v. Associated Credit Bureau Servs., Inc.*, 451 F. Supp. 447 (E.D. Pa. 1977). The D.C. Circuit, on the other hand, has rejected the technical accuracy approach, holding instead that "reports containing factually correct information that nonetheless mislead their readers are neither maximally accurate nor fair to the consumer who is the subject of the reports." *Koropoulos v. Credit Bureau, Inc.*, 734 F.2d 37, 40 (D.C. Cir. 1984); *see also Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147 (9th Cir. 2009); *Saunders v. Branch Banking & Trust Co.*, 526 F.3d 142 (4th Cir. 2008); *Sepulvado v. CSC Credit Servs., Inc.*, 158 F.3d 890 (5th Cir. 1998).

The Third Circuit has not stated outright its position on this particular issue. *See Krajewski v. Am. Honda Fin. Corp.*, 557 F. Supp. 2d 596, 614 (E.D. Pa. 2008) ("Whether the accuracy requirement of § 1681e(b) merely requires technical accuracy or requires something more has not been clarified by either the United States Supreme Court or the Third Circuit."). However, it did recently note in *Cortez v. Trans Union, LLC*, 617 F.3d 688, 709 (3d Cir. 2010), that "the distinction between 'accuracy' and 'maximum possible accuracy' . . . is . . . quite dramatic." The *Cortez* court then went on to cite favorably a Fifth Circuit opinion, *Pinner v. Schmidt*, 805 F.2d 1258 (5th Cir. 1986), where a statement on a credit report, although true, was "woefully misleading" and therefore inaccurate for purposes of § 1681e(b). *Cortez*, 617 F.3d at 709. Moreover, many recent cases in the Eastern District of Pennsylvania have openly adopted the *Koropoulous*/maximum possible accuracy approach as the majority approach. *See, e.g.*, *Smith v. HireRight Solutions, Inc.*, No. 09-6007, 2010 U.S. Dist. LEXIS 46525, at *13-15 & n.5 (E.D. Pa. May 12, 2010) ("[T]he majority of Circuit Courts have adopted the maximum possible accuracy approach which holds that a credit entry can be incomplete or inaccurate within the meaning of the FCRA either because it is patently incorrect, or because it is misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions. . . . [T]his Court will follow the majority of authority and adopt the maximum accuracy approach over the technical accuracy approach." (internal quotations and citations omitted)); *Krajewski*, 557 F. Supp. 2d at 614 ("I, too, will follow *Koropoulos* and deny summary judgment if there is a genuine issue of material fact as to whether the report was . . . misleading." (internal quotations and citations omitted)); *Agosta v. Inovision, Inc.*, No. 02-806, 2003 U.S. Dist. LEXIS 23889, at *17 (E.D. Pa. Dec. 16, 2003) ("Though 'technically accurate,' a derogatory entry on a credit report is actionable because it is misleading or materially incomplete."); *Evantash v. G.E.*

*Capital Mortg. Servs., Inc.*, No 02-1188, 2003 U.S. Dist. LEXIS 23131, at *12-13 (E.D. Pa. Nov. 25, 2003) ("Because the Third Circuit has not endorsed the 'technical accuracy defense,' we shall apply the less stringent approach articulated in *Koropoulos*. Applying that approach, we find there is a genuine issue of material fact as to whether Trans Union's treatment of the Account was so misleading as to be inaccurate within the meaning of Section 1681e(b). A reasonable jury could find that the bankruptcy reference in Plaintiff's credit report misled potential creditors into believing that she had filed for bankruptcy.").

In light of the above, I too will apply the *Koropoulos* approach, and ask whether the Verizon tradeline on Plaintiff's Equifax credit report was "'misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions.'" *Smith*, 2010 U.S. Dist. LEXIS 46525, at *13 (quoting *Sepulvado v. CSC Credit Servs., Inc.*, 158 F.3d 890, 895 (5th Cir. 1998)). The undisputed facts reveal that Plaintiff sent a check for $260.10, but that Verizon never cashed it. Thus, the Verizon tradeline on Plaintiff's Equifax credit report may have been technically accurate, but may also have been misleading—for example, a trier of fact could find that the Verizon tradeline could leave the impression that Plaintiff never even attempted to pay his bill, even though Plaintiff had in fact mailed a check to cover the debt. A seeming failure to attempt to pay could, in turn, adversely affect Plaintiff's ability to obtain credit. Thus, there is a genuine issue of material fact as to whether the credit report in question was so misleading as to be inaccurate, and Defendants therefore cannot invoke the accuracy defense to defeat Plaintiff's FCRA claims on summary judgment.

### iii. Reasonableness

Equifax contends in the alternative that its procedures are reasonable as a matter of law and therefore not in violation of the FCRA.

"Reasonable procedures are those that a reasonably prudent person would undertake under the circumstances." *Philbin v. Trans Union Corp.*, 101 F.3d 957, 963 (3d Cir. 1996) (internal quotations and citations omitted). "Judging the reasonableness of a credit reporting agency's procedures involves weighing the potential harm from inaccuracy against the burden of safeguarding against such inaccuracy," *id.*, but "the reasonableness of a credit reporting agency's procedures is 'normally a question for trial unless the reasonableness or unreasonableness of the procedures is beyond question," *Cortez v. Trans Union, LLC*, 617 F.3d 688, 709 (3d Cir. 2010) (quoting *Sarver v. Experian Info. Solutions*, 390 F.3d 969, 971 (7th Cir. 2004)).

For § 1681e(b) purposes, I am unable to determine whether Equifax's procedures are reasonable as a matter of law. In its Statement of Undisputed Material Facts, Equifax provides very little information on what procedures it follows in preparing a credit report in the first instance. *See* Statement of Undisputed Material Facts ¶¶ 1-4, ECF No. 29.[3] Similarly, the Declaration of Vicki Banks devotes only a few paragraphs to how Equifax first assembles credit information for each consumer. *See* Banks Decl. ¶¶ 3-6, ECF No. 29.[4] Therefore, there remain

---

[3] These paragraphs read:
>    1. Equifax is a consumer reporting agency within the meaning of the FCRA. It compiles information it receives from creditors, public records, merchants, and other sources and assembles that information into credit reports that are provided to subscribers who have a permissible purpose for obtaining these reports.
>    2. Equifax maintains credit history files on more than 200 million consumers and receives over one billion updates from thousands of data furnishers every month.
>    3. Equifax accepts information regarding a consumer's credit only from those sources that—either on the basis of Equifax's prior experience, or because of the particular source's reputation—are determined by Equifax to be reasonably reliable sources.
>    4. Equifax maintains reasonable procedures designed to assure maximum possible accuracy of the information reported to its subscribers regarding consumers and to correct errors that are brought to its attention.

Statement of Undisputed Material Facts ¶¶ 1-4, ECF No. 29.

[4] These paragraphs read:

genuine issues of material fact on this point, and a jury must be presented with evidence on, and then assess the reasonableness or unreasonableness of, Equifax's investigation procedures.[5]

I will similarly submit Equifax's § 1681i(a) claim to a jury. On reasonableness in the § 1681i(a) context, the Third Circuit has stated more specifically, as laid out above, that the consumer must demonstrate that the consumer reporting agency "would have discovered a discrepancy had it undertaken a reasonable investigation." *Cortez*, 617 F.3d at 712-13. I find that there is at least a genuine issue of material fact on this point. It may be the case that a reasonable reinvestigation by Equifax would have led to the discovery that Plaintiff had sent a check to cover his debt to Verizon, but that Verizon had not cashed that check. That discovery in turn could have led to a more accurate credit report, one that noted Plaintiff's attempt to pay. Given my inability to make conclusions as a matter of law on this point, triers of fact must determine

---

> 1. Equifax is a consumer reporting agency within the meaning of the FCRA. It compiles information it receives from creditors, public records, merchants, and other sources and assembles that information into credit reports that are provided to subscribers who have a permissible purpose for obtaining these reports.
> 2. Equifax maintains credit history files on more than 200 million consumers and receives over one billion updates from thousands of data furnishers every month.
> 3. Equifax accepts information regarding a consumer's credit only from those sources that—either on the basis of Equifax's prior experience, or because of the particular source's reputation—are determined by Equifax to be reasonably reliable sources.
> 4. Equifax maintains reasonable procedures designed to assure maximum possible accuracy of the information reported to its subscribers regarding consumers and to correct errors that are brought to its attention.

Banks Decl. ¶¶ 3-6, ECF No. 29.

[5] The Third Circuit has not yet stated what exactly is required of a plaintiff to survive a motion for summary judgment on a § 1681e(b) claim. In *Philbin*, it "listed three different approaches that various courts have taken in determining if a plaintiff has introduced sufficient evidence to reach the jury under § 1681e(b) . . . : 'that a plaintiff must produce some evidence beyond a mere inaccuracy in order to demonstrate the failure to follow reasonable procedures; that the jury may infer the failure to follow reasonable procedures from the mere fact of an inaccuracy; or that upon demonstrating an inaccuracy, the burden shifts to the defendant to prove that reasonable procedures were followed.'" *Cortez*, 617 F.3d at 709-10 (quoting *Philbin*, 101 F.3d at 965). In neither *Philbin* nor *Cortez* did the Third Circuit settle on an approach, concluding both times that "the plaintiff had produced evidence sufficient to meet any of the three standards." *Id.* Here, I need not choose between the three, but for a different reason. There is simply not enough evidence in the record to decide this issue on summary judgment; Defendant has not met its initial burden of demonstrating that there are no material facts supporting the nonmoving party's legal position. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *see also Krajewski v. Am. Honda Fin. Corp.*, 557 F. Supp. 2d 596, 617 (E.D. Pa. 2008) ("Because of the current paucity of evidence in the record regarding the investigation conducted . . . , I will deny [the] motion for summary judgment . . . ."); *Campbell v. Chase Manhattan Bank, USA, N.A.*, No. 02-3489, 2005 U.S. Dist. LEXIS 16402, at *46 (D.N.J. June 27, 2005) ("Without this very crucial information, the Court is not in the position to adjudicate this matter on summary judgment.").

what a reasonable reinvestigation would have entailed and whether Equifax's was sufficient. "'[W]hether the credit reporting agency has a duty to go beyond the original source will depend' on a number of factors." *Cushman v. Trans Union Corp.*, 115 F.3d 220, 225 (3d Cir. 1997) (quoting *Henson v. CSC Credit Servs.*, 29 F.3d 280, 287 (7th Cir. 1994)). These include "'whether the consumer has alerted the reporting agency to the possibility that the source may be unreliable or the reporting agency itself knows or should know that the source is unreliable,'" as well as "'the cost of verifying the accuracy of the source versus the possible harm inaccurately reported information may cause the consumer.'" *Id.* (quoting *Henson*, 29 F.3d at 287). But again, such a determination is for the jury. *See id.* ("Whatever considerations exist, it is for 'the trier of fact [to] weigh the[se] factors in deciding whether [the defendant] violated the provisions of section 1681i.'" (quoting *Henson*, 29 F.3d at 287)).[6]

However, while Plaintiff may proceed to trial on his claims that Defendant negligently violated the FCRA, he cannot survive summary judgment on his claims that Defendant willfully violated the FCRA. To show willful noncompliance, a plaintiff must prove that the defendants acted knowingly, intentionally, or recklessly in disregarding the FCRA. *See Safeco Ins. Co. of America v. Burr*, 551 U.S. 47 (2007); *Cortez*, 617 F.3d at 721 & n.39; *Cushman*, 115 F.3d at

---

[6] Defendant also submits on the reasonableness issue that "credit reporting agencies are not in a position to resolve complex disputes between creditors and consumers, and that consumers should not be permitted to use lawsuits against consumer reporting agencies to collaterally attack their creditors." Defendant then cites *Saunders v. Branch Banking & Trust Co.*, 526 F.3d 142 (4th Cir. 2008); *DeAndrade v. Trans Union LLC*, 523 F.3d 61 (1st Cir. 2008); *Fashakin v. Nextel Comm'ns*, No. 05-3080, 2009 WL 790350 (E.D.N.Y. Mar. 25, 2009); and *Williams v. Colonial Bank*, 826 F. Supp. 415, 418 (M.D. Ala. 1993). However, these cases, and several others making the collateral attack point, are distinguishable. Most of those presented to and found by the Court involve consumers who are attacking the underlying validity of their debt obligation. For instance, in *DeAndrade*, 523 F.3d 61, the plaintiff sought to argue that he did not owe mortgage payments because the mortgage was fraudulently procured. In *Fashakin*, 2009 WL 790350, the plaintiff refused to pay her Nextel bill because she disputed the amount allegedly owed. In these cases, the courts commented that credit reporting agencies could not be expected to resolve legal disputes between consumers and creditors on a § 1681i(a) reinvestigation. In this case, however, Plaintiff's case does not hinge on the legal validity of his debt to Verizon; Plaintiff does not center his case around whether he owed any money to Verizon in the first place. Rather, Plaintiff argues more simply that he sent a check, and that Equifax could have uncovered as much and updated his credit report accordingly. Thus, Plaintiff's suit does not represent a collateral attack on Verizon, but rather a charge that Equifax could have discovered a discrepancy upon reinvestigation. For this reason, Defendant's collateral attack argument in unavailing.

226-27. In *Safeco*, 551 U.S. at 68 (quoting *Farmer v. Brennan*, 511 U.S. 825, 836 (1994)), the Supreme Court elaborated that recklessness is "conduct violating an objective standard: action entailing 'an unjustifiably high risk of harm that is either known or so obvious that it should be known.'"[7]

In this case, Plaintiff has furnished no evidence that Defendant knowingly or intentionally disregarded his rights or violated the FCRA. Furthermore, Defendant's procedures and actions were not in reckless disregard of the FCRA. Although there is very little evidence in the record as to Defendant's investigation procedures generally and in this instance, Equifax does at least submit that it only reproduces credit information from reliable sources. Third Circuit cases have indicated that, absent notice of inaccuracy, the FCRA does not require an investigation beyond the original source of information. *See Krajewski v. Am. Honda Fin. Corp.*, 557 F. Supp. 2d 596, 618 (E.D. Pa. 2008) (citing *Cushman*, 115 F.3d at 225). With such case law supporting its approach, Equifax was not taking a known or obvious risk in reproducing credit information from Verizon in the first instance. As for Equifax's reinvestigation procedures, all three of the major credit reporting agencies have similar ones, and the ACDV approach has been upheld as a matter of law by other courts. Reply 7 (citing *Podell v. Citicorp Diners Club*, 112 F.3d 98, 105 (2d Cir. 1997); *Morris v. Trans Union LLC*, 420 F. Supp. 2d 733, 756 (S.D. Tex. 2006), *aff'd* 224 F. App'x 415 (5th Cir. 2007); *Benson v. Trans Union LLC*, 387 F. Supp. 2d 834, 843 (N.D. Ill. 2005); *Anderson v. Trans Union LLC*, 367 F. Supp. 2d 1225, 1233 (W.D. Wis.

---

[7] More fully, the Supreme Court wrote: "While the term recklessness is not self-defining, the common law has generally understood it in the sphere of civil liability as conduct violating an objective standard: action entailing an unjustifiably high risk of harm that is either known or so obvious that it should be known. . . . It is this high risk of harm, objectively assessed, that is the essence of recklessness at common law. . . . There being no indication that Congress had something different in mind, we have no reason to deviate from the common law understanding in applying the [FCRA]. Thus, a company subject to [the] FCRA does not act in reckless disregard of it unless the action is not only a violation under a reasonable reading of the statute's terms, but shows that the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless." *Safeco*, 551 U.S. at 68-69 (internal quotations and citations omitted).

2005); *Schmitt v. Chase Manhattan Bank, N.A.*, No 03-3295, 2005 WL 2030483, at *3 (D. Minn. Aug. 23, 2005); *Perry v. Experian Info. Solutions, Inc.*, No. 05-1578, 2005 WL 2861078, at *5 (N.D. Ill. Oct. 28, 2005)). Once again, given that Equifax's approach has been upheld as a matter of law by other courts, Equifax's actions did not constitute a high risk that was known or should have been known. Thus although a jury might find that Defendant's investigation and reinvestigation were negligently performed in this instance, there is no indication that the company behaved recklessly, let alone intentionally or knowingly.

### iv. Conclusion

In sum, Defendant cannot assert the accuracy defense, and I do not find its investigation or its reinvestigation procedures reasonable as a matter of law. Thus, Plaintiff survives Defendant's motion for summary judgment and can proceed to trial on his claims that Defendant negligently violated the FCRA. However, Plaintiff does not survive Defendant's motion for summary judgment on his claims that Defendant willfully violated the FCRA.

### B. Pennsylvania UTPCPL

Plaintiff also alleges that Defendant's actions constitute unfair and deceptive acts and practices under the UTPCPL. Defendant has countered in the main that Plaintiff cannot establish a claim under the UTPCPL because he did not purchase or lease any goods from Equifax.

The UTPCPL does indeed provide that it is unlawful to engage in "unfair or deceptive acts or practices in the conduct of any trade or commerce." 73 Pa. Cons. Stat. § 201-3 (2008). However, it also provides that private actions be commenced by a "person who purchases or leases goods or services primarily for personal, family or household purposes and thereby suffers any ascertainable loss of money or property." 73 Pa. Cons. Stat. § 201-9.2(a) (2008). Elaborating

16

upon this language, the Third Circuit has held that the statute "'unambiguously permits only persons who have purchased or leased goods or services to sue.'" *Balderston v. Medtronic Sofamor Danek, Inc.*, 285 F.3d 238, 242 (3d Cir. 2002) (quoting *Katz v. Aetna Cas. & Sur. Co.*, 972 F.2d 53, 55 (3d Cir. 1992)); *see also Lawrence v. Trans Union LLC*, 296 F. Supp. 2d 582, 592 (E.D. Pa. 2003) ("I now hold that consumers cannot sue consumer reporting agencies under the PA CPL who have not sold or leased goods to them.") (Brody, J.); *accord Abusaab v. Equifax Info. Servs., LLC*, No. 05-5094, 2006 U.S. Dist. LEXIS 26178, at *6 (E.D. Pa. May 4, 2006) ("Even assuming the claim is not preempted, the decisions of the Pennsylvania courts, our Court of Appeals, and this court demonstrate that plaintiff cannot state a claim under the UTPCPL. The Pennsylvania courts have not applied the UTPCPL to credit reporting agencies." (internal citations omitted)).

In the facts at hand, Plaintiff has not demonstrated that he purchased or leased goods or services from Equifax, and therefore his UTPCPL claim must fail. The Complaint states that the "above described purchases by Plaintiff from . . . Equifax constitute 'commerce' and the 'sale or distribution of any services and any property' as defined by 73 P.S. § 201.2 of the PA UTPCPL." Compl. ¶ 57, ECF No. 1. However, there are no purchases by Plaintiff from Equifax described earlier in the Complaint. Moreover, Equifax argues in its reply brief that "[i]t is undisputed that Plaintiff does not allege, or provide evidence, that he purchased or leased any services from Equifax." Reply 12. Although Plaintiff submitted a counterstatement of material facts subsequent to Defendant's reply, he did not challenge this assertion that he neither purchased nor leased from Equifax. *See* Counterstatement of Material Facts, ECF No. 31. Finally, although Defendant submitted into evidence a portion of Plaintiff's deposition, wherein Plaintiff avers that he went online and asked for his credit report, *see* Shannon Dep. 102:14, ECF No. 29, such averment

17

does not constitute sufficient proof of a purchase or lease. First, free credit reports are made available to consumers every twelve months. *See* 15 U.S.C. § 1681j(a) (2006). Given that it is possible to obtain free credit reports, that Defendant has stated that Plaintiff neither purchased nor leased services from Equifax, and that Plaintiff has not challenged this allegedly undisputed fact, I conclude there was no purchase or lease by Plaintiff from Defendant under the facts at hand. Second, as a more general matter, Pennsylvania courts have not applied the UTPCPL to credit reporting agencies. *Abusaab*, 2006 U.S. Dist. LEXIS 26178, at *6 (citing *Lawrence*, 296 F. Supp. 2d at 591). Thus, I find that Plaintiff has not met the prerequisite for bringing suit under the UTPCPL and therefore grant Defendant's motion for summary judgment on Plaintiff's UTPCPL claims as well.

### C. Negligence

Plaintiff similarly argues that Defendant was negligent, "in failing to provide a proper and reasonable investigation concerning the inaccurate information after Plaintiff disputed the validity, in failing to timely and properly investigate the inaccurate information after the dispute and in failing to delete or correct the inaccurate information from Plaintiff's credit report." Resp. 8. Defendant has emphasized in response that these allegations are preempted by the FCRA.

In § 1681h(e), the FCRA states:

> Except as provided in sections 1681n and 1681o . . . , no consumer may bring any action or proceeding in the nature of defamation, invasion of privacy, or negligence with respect to the reporting of information against any consumer reporting agency, any user of information, or any person who furnishes information to a consumer reporting agency, based on information disclosed pursuant to section 1681g, 1681h, or 1681m . . . ,[8] or based on information disclosed by a user of a consumer report to or for a consumer against whom the user has taken adverse action, based in whole or in part on the report[,] except as

---
[8] These provisions govern disclosures to consumers and the duties of users of consumer reports.

to false information furnished with malice or willful intent to injure such consumer.

In other words, unless a plaintiff alleges willfulness in pursuing its common law claims, the FCRA provides the exclusive remedy.[9] By definition, a plaintiff cannot allege willful negligence. *See Johnson v. Citimortgage, Inc.*, 351 F. Supp. 2d 1368, 1379-80 (N.D. Ga. 2004) ("[W]here there is a requirement of 'malice or willful intent to injure' there is no cause of action for negligence. Because negligence claims, by definition, are not premised upon Defendant's malice or willful intent to injure, negligence claims are preempted by § 1681h(e)."). Therefore, the only negligence action that Plaintiff can pursue is a negligence action under the FCRA. In sum, I grant Defendant's motion for summary judgment on Plaintiffs negligence claims to the extent Plaintiff brings those claims outside of the FCRA, but deny Defendant's motion for summary judgment on Plaintiff's negligence claims to the extent Plaintiff brings those claims under the FCRA, for the reasons outlined in Part IV.A above.

### D. Invasion of Privacy/False Light

Finally, Plaintiff argues that Defendant "violated Plaintiff's right of privacy by impermissibly accessing Plaintiff's most private information and placing the Plaintiff in a false light before the eyes of other[s], including potential credit grantors and creditors as well as

---

[9] The FCRA contains an additional preemption provision in § 1681t(b)(1)(F), stating, "No requirement or prohibition may be imposed under the laws of any State . . . with respect to any subject matter regulated under . . . section 1681s-2 of this title, relating to the responsibilities of persons who furnish information to consumer reporting agencies." Section 1681s-2 provides in the main that "[a] person shall not furnish any information relating to a consumer to any consumer reporting agency if the person knows or has reasonable cause to believe that the information is inaccurate." 15 U.S.C. § 1681s-2(a)(1)(A) (2006). Elsewhere § 1681s-2 "sets forth the duties of furnishers to investigate inaccurate information upon notice of a consumer dispute, delegates responsibility for enforcement of the various provisions of 1681s-2, and authorizes certain federal agencies to promulgate regulations implementing 1681s-2." *Manno v. Am. Gen. Fin. Co.*, 439 F. Supp. 2d 418, 424 n.8 (E.D. Pa. 2006). Thus, this other preemption provision is limited to entities that furnish information to consumer reporting agencies, and does not apply to consumer reporting agencies themselves. Because Defendant Equifax is a consumer reporting agency, § 1681t(b)(1)(F) does not apply to preempt claims against it.

family, friends and the general public." Compl. ¶ 74; *see also* Resp. at 9. Defendant has again countered primarily that such allegations are preempted by the FCRA.

As outlined above, § 1681h(e) of the FCRA holds that "no consumer may bring any action or proceeding in the nature . . . invasion of privacy . . . except as to false information furnished with malice or willful intent to injure such consumer." "Willful" for FCRA purposes can denote knowing, intentional, or reckless disregard of the FCRA. *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47 (2007); *Cortez v. Trans Union, LLC*, 617 F.3d 688, 721 & n.39 (3d Cir. 2010); *Cushman v. Trans Union Corp.*, 115 F.3d 220, 226 (3d Cir. 1997); *see also supra* Part IV.A.

In this case, Plaintiff has produced no evidence of "malice or willful intent to injure." Moreover, Plaintiff does not even specifically allege willful invasion of privacy in his complaint or in his response to Defendant's motion for summary judgment. Finally, as elaborated above, at no point did Equifax demonstrate a reckless disregard for Plaintiff's rights. Thus, I find Plaintiff's invasion of privacy claim preempted by the FCRA, and grant Defendant's motion for summary judgment on this count of Plaintiff's complaint.

## V. Conclusion

For the reasons set forth above, Defendant's motion for summary judgment is denied with respect to Plaintiff's negligent FCRA claims, and granted as to all other claims.

                         s/ Anita B. Brody

                         ANITA B. BRODY, J.

Copies **VIA ECF** on _____ to:     Copies **MAILED** on _____ to: